1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROCHELLE M. McCAW, formerly known as ROCHELLE M. NELSON, | ) ) | Case No.: 2:04-CV-878-RLH-RJJ |
|               Plaintiff, | ) ) ) | **O R D E R** |
|     vs. | ) ) | (Motion for Summary Judgment and Motion to Dismiss–#64) |
| JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POST OFFICE SERVICE, et al., | ) ) ) ) | |
|             Defendants. | ) ) | |

Before the Court is John E. Potter's (Federal Defendant) **Motion for Summary Judgment and Motion to Dismiss** (#64), filed May 1, 2006. The Court has also considered Plaintiff's Opposition (#68), filed June 14, 2006, and Federal Defendant's Reply (#70), filed June 27, 2006.

## BACKGROUND

Plaintiff filed this Civil Rights Complaint on June 24, 2004, alleging, inter alia, employment discrimination by the Federal Defendant. Specifically, Plaintiff alleges (1) retaliation by the Postal Service and the Postal Inspection Service for lodging a sexual harassment complaint

AO 72
(Rev. 8/82)

1

1   against Neil Call, (2) being subjected to a hostile and offensive workplace, and (3) constructive

2   discharge.

3           Plaintiff was a twenty-three year employee of the United States Postal Service,

4   where she served as a postage due clerk at the James Brown Mail Facility.  Neil Call was a Postal

5   Inspector with the Postal Inspection Service in Las Vegas and had been employed since 1983.  In

6   August 1998, Plaintiff and Call met and began a consensual sexual relationship, which included

7   engaging in sexual activities at Plaintiff's work site.  In July 1999, Plaintiff informed Call that she

8   would not have sex with him anymore until he divorced his wife.  Nonetheless, Call continued to

9   visit Plaintiff intermittently at the James Brown Mail Facility between August 1999 and January

10  2000.  Although these unwelcome visits did not result in sex, Call would fondle Plaintiff's private

11  parts and demand that Plaintiff satisfy Call's sexual urges.

12          Plaintiff alleges that Call had previously told her stories of how Postal Inspectors

13  covered up crimes they did not want to investigate.  Plaintiff claims that she was afraid of Call, as

14  a postal inspector, because either Call or his immediate colleagues would have been made aware

15  of any investigation of sexual harassment lodged by Plaintiff.  As a result, Plaintiff did not report

16  any of these unwanted visits to her supervisor at the James Brown Mail Facility for fear of having

17  Call or one of his friends investigate and cover up her allegations.

18          Prior to the harassment, Plaintiff claims she was a happy, jovial person who would

19  engage in light-hearted banter with her co-workers, often telling jokes.  During the harassment,

20  however, her demeanor changed completely and she became withdrawn, depressed, and cried a lot.

21  Nonetheless, her supervisors, who were required to visit her desk area at least twice during a shift,

22  never inquired about her well-being.

23          After a prolonged period of not speaking to one another, Plaintiff sent Call a

24  birthday card on January 20, 2000.  Call used this opportunity to inform Plaintiff that their

25  relationship was over and that he had begun dating another woman.  Thereafter, in late January

26  2000, Plaintiff's deteriorating medical condition compelled her to report the sexual harassment to

AO 72
(Rev. 8/82)

1   the Union President, Billy Harrell, and the then plant manager of the James Brown Facility,

2   Clifford Rucker.  Rico Caggiano, an investigator with the Postal Inspection Service in

3   Washington, D.C., was subsequently assigned to the case.  According to Plaintiff, Caggiano is a

4   friend of Call's and had personally trained Call.  Notwithstanding the apparent conflict of interest,

5   Caggiano remained on the case and interviewed Plaintiff on February 6, 2000, and Call on

6   February 9, 2000, after which Call was placed on administrative leave.  Caggiano proceeded with a

7   criminal investigation of Plaintiff's sexual harassment complaint.  The investigation concluded in

8   May 2000.

9            In June 2000 Caggiano called Plaintiff and informed her that due to her complaint

10   and supporting documents the entire Postal Inspectors' office in Las Vegas was under

11   investigation for umpiring for a fee at local sports events while also being paid by the Postal

12   Agency.  Plaintiff alleges that this caused her great emotional distress, which exacerbated her

13   mental state.  On June 22, 2000, a Stand-up Lecture was called for all available postal employees

14   at the General Mail Facility.  Two Postal Inspectors put on the lecture.  At the end of the lecture

15   one of the Postal Inspectors stated, "50% of people divorce, 50% of relationships fail, and when

16   you date someone at work, don't go after them after the relationship fails."  After the lecture,

17   Plaintiff was allegedly approached by a number of people who expressed the view that the lecture

18   had been about her.  According to Plaintiff, the lecture exposed her to the scorn and ridicule of her

19   co-workers and supervisors and was a deliberate effort to embarrass, intimidate, and harass

20   Plaintiff.

21            Plaintiff alleges that the manner in which the investigation was conducted caused

22   Plaintiff to be excluded from on the job conversations and friendships that she had developed over

23   the years.  Although Plaintiff's sexual harassment and hostile workplace claims were based on

24   Call's unwelcome attempts to compel sex at her workplace from August 1999 to January 29, 2000,

25   the Postal Inspectors investigating the claims would graphically detail the consensual sexual

26   activities of Plaintiff with Call that occurred in the workplace prior to August 1999.

AO 72
(Rev. 8/82)

1    Plaintiff began individual therapy with a local psychiatrist on February 18, 2000,

2  and continued the sessions until August 17, 2000.  On July 18, 2000, Plaintiff completed an

3  Application for Immediate Retirement.  On July 26, 2000, Plaintiff's request for 240 hours of

4  advanced sick leave was approved to begin on July 31, 2000, which consequently was Plaintiff's

5  last day of work at the U.S. Postal Service.  Upon expiration of Plaintiff's advanced sick leave,

6  Plaintiff did not return to work.  On November 14, 2000, Plaintiff's application for disability

7  retirement was approved.  On September 27, 2000, while on advanced sick leave status, Plaintiff

8  made her initial contact with EEO by filing a request for Precomplaint Counseling.  In December

9  2001, Call was terminated from the Postal Inspection Service.

10                                    **DISCUSSION**

11  **I.  Summary Judgment Standard**

12    Summary judgment is proper when "the pleadings, depositions, answers to

13  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

14  genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

15  of law." Fed. R. Civ. P. 56(c).  An issue is "genuine"only if there is a sufficient evidentiary basis

16  on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material"

17  only if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby,*

18  *Inc.*, 477 U.S. 242, 248-49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

19  574, 587 (1986).  The party moving for summary judgment has the burden of showing the absence

20  of a genuine issue of material fact, and the court must view all facts and draw all inferences in the

21  light most favorable to the non-moving party.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883

22  (9th Cir. 1982), *cert. denied*, 460 U.S. 1085 (1983).

23    Once the moving party satisfies the requirements of Rule 56, the burden shifts to

24  the party resisting the motion to "set forth specific facts showing that there is a genuine issue for

25  trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-

26  moving party "may not rely on denials in the pleadings but must produce specific evidence,

4

AO 72
(Rev. 8/82)

through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986).

**II. Title VII**

Title VII prohibits employment discrimination based on an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  To prevail on such a claim, Plaintiff must establish a prima facie case of discrimination by offering evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  This evidentiary showing may be satisfied by presenting either direct evidence of discriminatory intent, *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997), or by meeting the elements set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "At the summary judgment stage, the 'requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Once plaintiff has satisfied this evidentiary requirement, there is a rebuttable "presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254.  The burden of production then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  To satisfy this required articulation, the defendant must clearly set forth, through the introduction of admissible evidence, legitimate reasons for its conduct. *Burdine*, 450 U.S. at 255.

"If the employer sustains this burden, the plaintiff must then demonstrate that the proffered nondiscriminatory reason is merely a pretext for discrimination." *Lyons*, 307 F.3d at 1112.  Plaintiff can demonstrate pretext either "(1) indirectly, by showing that the employer's

1  proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise

2  not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the

3  employer." *Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)

4  (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-21 (9th Cir. 1998)).  This showing of

5  pretext does not necessarily impose a new burden of production.  "[A] disparate treatment plaintiff

6  can survive summary judgment without producing any evidence of discrimination beyond that

7  constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding

8  the truth of the employer's proffered reasons." *Chuang*, 225 F.3d at 1127.  *See also Lyons*, 307

9  F.3d at 1112 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)) ("the

10  factfinder may infer 'the ultimate fact of intentional discrimination' without additional proof once

11  the plaintiff has made out her prima facie case if the factfinder believes that the employer's

12  proffered nondiscriminatory reasons lack credibility").

13  **A. Retaliation**

14        In order to establish a prima facie case of retaliation under Title VII, Plaintiff must

15  demonstrate that (1) she engaged in an activity protected under Title VII; (2) her employer

16  subjected her to an adverse employment action; and (3) a causal link exists between the protected

17  activity and the adverse employment action. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th

18  Cir.2000).  The Court will now determine whether the elements for a claim of retaliation under

19  Title VII's opposition clause are met.

20        **1. Protected Activity**

21        Plaintiff alleges that her verbal complaint about sexual harassment to Cliff Rucker

22  in late January 2000 and the follow-up complaint to the Postal Investigators from Washington

23  D.C. on February 6, 2006, are protected by Title VII of the Civil Rights Act under the opposition

24  clause.  The opposition clause of 42 U.S.C. § 2000e-3(a) states in relevant part, "It shall be an

25  unlawful employment practice for an employer to discriminate against any of his employees ···

26

6

1  because [the employee] has opposed any practice made an unlawful employment practice by [Title

2  VII]····" 42 U.S.C. § 2000e-3(a) (2004).

3          The Federal Defendant counters that Plaintiff's February 2000 complaint to Mr.

4  Rucker and the Postal Inspectors did not qualify as a protected activity subject to Title VII

5  protections because Plaintiff's purpose in filing her February 2000 complaint was to lodge a

6  complaint against Mr. Call and her perceived sexual harassment by Mr. Call.  According to the

7  Federal Defendant there is no evidence, nor has Plaintiff pointed to any, that Plaintiff either

8  alleged (1) an "unlawful employment practice by the U.S. Postal Service prior to February 6, 2000,

9  or (2) any belief by Plaintiff that the U.S. Postal Service prior to February 6, 2000, engaged in

10  unlawful discrimination against the Plaintiff.

11          The Court notes that the Federal Defendant fails to present any authority for its

12  assertion that Plaintiff's complaint against Mr. Call, an employee of the United States Postal

13  Service, for sexual harassment does not constitute "opposing" a Postal Service practice.  The

14  Ninth Circuit has held that "employers may be liable for failing to prevent or remedy sexual

15  harassment among co-workers of which management-level employees knew or in the exercise of

16  reasonable care should have known." *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir.1991).  It is

17  unnecessary that the employment practice actually be unlawful; opposition thereto is protected

18  when it is "based on a ' reasonable belief ' that the employer has engaged in an unlawful

19  employment practice." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir.1994) (emphasis in original,

20  citation omitted).  Here, it was reasonable for Plaintiff to believe that she was opposing an

21  unlawful employment practice by complaining to her supervisors about a fellow employee's

22  sexual harassment which she believed was known or should have been known by management-

23  level employees.  Accordingly, the first element is met.

24                    **2. Adverse Employment Action**

25          An "adverse employment action" is "any adverse treatment that is based on a

26  retaliatory motive and is reasonably likely to deter the charging party or others from engaging in a

7

AO 72
(Rev. 8/82)

1  protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir.2000).  Although this

2  definition includes actions "materially affect[ing] compensation, terms, conditions, or privileges"

3  of employment, 42 U.S.C. § 2000e-2(a)(1), it "is not limited to discriminatory actions that affect

4  the terms and conditions of employment." *Burlington Northern and Santa Fe Ry. Co. v. White,*

5  126 S.Ct. 2405, 2412-2413 (2006).

6          Plaintiff alleges that she suffered the following adverse employment actions.  First,

7  Cliff Rucker, plant manager, authorized 12 psychological counseling sessions for Plaintiff.

8  Plaintiff began counseling on February 18, 2000, but after four visits the sessions were terminated

9  by the Federal Defendant on March 23, 2000, and were not reinstated until June 9, 2000.  Second,

10 Plaintiff alleges she was constructively discharged when she was compelled to take leave without

11 pay (LWOP) and apply for and receive medical disability retirement as a result of her

12 psychological condition which was brought on by both the hostile work environment and the

13 retaliation she suffered.  Third, the inspection service investigation was allegedly carried out in a

14 manner designed to ridicule Plaintiff and hold her in scorn.  Fourth, the Federal Defendant

15 attempted to terminate Plaintiff.  Fifth, Plaintiff was required to attend a "stand-up" lecture

16 designed to attack her.  And lastly, Plaintiff was shunned by her co-workers and supervisory

17 personnel.

18          a. Termination of Counseling Sessions.  The Federal Defendant does not

19 contest that the termination of Plaintiff's counseling sessions could constitute an adverse

20 employment action.

21          b. Constructive Discharge.  As for Plaintiff's claim that she was

22 constructively discharged, the Federal Defendant claims that a constructive discharge claim cannot

23 serve as the basis for an adverse employment action.  The Court disagrees.  The Ninth Circuit has

24 stated in dicta that "[i]If shown, constructive discharge is an adverse employment action." *Jordan*

25 *v. Clark*, 847 F.2d 1368, 1377, n. 10 (9th Cir.1988) cert. denied, 488 U.S. 1006.  The Court finds

26 that being forced to take leave without pay as a result of intolerable work conditions created by the

8

AO 72
(Rev. 8/82)

1    defendant is sufficiently analogous to being forced to quit.  In both instances the plaintiff is

2    foregoing the benefits of working, namely income. *See Llewellyn v. Celanese Corp.*, 693 F. Supp.

3    369, 381 (W.D.N.C. 1988) (finding that taking medical leave without pay as a result of an

4    intolerable work situation is a constructive discharge in the context of back pay liability).

5    Similarly, the Court also finds merit to Plaintiff's claim that applying and receiving medical

6    disability retirement based on a psychological condition which was allegedly caused by the

7    intolerable work conditions constituted a constructive discharge.  Accordingly, because a

8    reasonable person in Plaintiff's position may have felt forced to take LWOP and/or medical

9    disability retirement, as explained in more detail below in the section entitled Constructive

10   Discharge, Plaintiff has sufficiently alleged an adverse employment action.

11                    c. Inspection Service Investigation.  With respect to Plaintiff's claim that

12   the inspection service investigation was retaliatory, the Federal Defendant argues that this cannot

13   be an adverse employment action because it is not related to Plaintiff's conditions or terms of

14   employment.  However, the Supreme Court recently held that an adverse employment action "is

15   not limited to discriminatory actions that affect the terms and conditions of employment."

16   *Burlington,* 126 S.Ct. 2405, 2412-2413.  Although the Court agrees that Plaintiff's complaint to the

17   Postal Inspectors did not limit the scope of her investigation to non-consensual acts occurring after

18   August 1999, the Court nonetheless finds that a genuine issue of material fact exists as to whether

19   (1) the investigation was properly carried out, i.e., whether the postal inspectors differentiated

20   between the consensual and non-consensual encounters between Plaintiff and Call and (2) the

21   weight given to Call's denial of non-consensual encounters was appropriate given the Postal

22   Inspection Service's determination that Call's integrity and honesty had been called into question.

23                    Caggiano, the investigator assigned to the case, states in his deposition that he

24   proceeded with a criminal investigation of the sexual harassment claims and concluded his

25   investigation in May 2000, after which he filed a report.  Notwithstanding, Plaintiff states in her

26   affidavit that she was never advised verbally or in writing about the results of the investigation or

AO 72
(Rev. 8/82)

1   if any corrective actions had been taken.  Further,  the Notice of Proposed Removal, dated April

2   25, 2001, sent to Call informing him of the charges against him, do not list or mention Plaintiff's

3   sexual harassment claims and, instead, includes only the consensual sexual encounters under the

4   heading "Conduct Unbecoming A Postal Inspector."  Based on the record before it,  the Court

5   finds that a jury could reasonably infer that the sexual harassment charge was not pursued in an

6   attempt to retaliate against Plaintiff for bringing the claim.  If so, it is reasonably likely that an

7   individual would not file a sexual harassment complaint if she felt that her complaint would not be

8   thoroughly investigated or that she would not be believed.  Accordingly, the Court will not dismiss

9   this claim.

10                     d.  Attempted Termination.  As for Plaintiff's claim that the Federal

11  Defendant attempted to terminate Plaintiff, the Court finds no merit to this argument.  The letter to

12  which Plaintiff refers to as a "Termination Letter" is in fact titled "Notice to Return to Duty" and

13  according to Ms. Ju-Chen Suen, Manager of Distribution Operations, is akin to a "where-are-you"

14  letter requesting information on an employee's continued absence.  The letter requests Plaintiff to

15  call regarding her continued absence and to provide documentation for her extended absence

16  within five days of receiving the notice.  Ms. Suen testified that the Postal Service does not fire

17  people based on a "where-are-you" letter, nor is it a prerequisite to initiating termination

18  proceedings.  In addition, Plaintiff admits that she received the "where-are-you" letter after her

19  disability retirement had been approved.  Under the circumstances, the Court cannot find it

20  reasonably likely that a charging party would be deterred from filing a sexual harassment

21  complaint for fear of losing her job as a result of receiving a "where-are-you" letter.  According,

22  this claim will be dismissed.

23                     e.  Stand-Up Session.  With respect to Plaintiff's claim that her required

24  attendance at the "stand-up" was designed to embarrass, humiliate, and attack Plaintiff, the Court

25  finds that Plaintiff has not sufficiently alleged an adverse employment action.  A "stand-up" is a

26  workplace training session which is conducted by managers and Postal Inspectors on a variety of

1   subjects.  Paul Stevens was the Postal Inspector assigned to deliver the "stand-up" on June 20,

2   2000, on assaults and threats in the workplace.  During the session, Stevens made the statement

3   that "50% of all relationships fail, and when you date someone at work, don't go after them after

4   the relationship fails."  Plaintiff testified she believed the comment was directed at her, and

5   Plaintiff's co-worker, Mary Handley, also testified that she believed the comment was directed

6   towards Plaintiff.  Although the Court understands the humiliation and embarrassment Plaintiff

7   may have felt at having the comment seemingly directed at her, neither a "bruised ego," *Flaherty*

8   *v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir.1994), nor public humiliation rises to the level of

9   an adverse employment action. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th

10  Cir.1989). To be actionable, the embarrassing condition must be severe or pervasive and not the

11  result of reasonable and legitimate employment concerns. *Stockett v. Muncie Indiana Transit*

12  *System*, 221 F.3d 997, 1002 (7th Cir. 2000).  Here, the comment made during the "stand-up"

13  session was neither severe or pervasive; moreover, it was the result of a legitimate employment

14  concern of providing information to employees on assaults and threats in the workplace.

15  Accordingly, the claim will be dismissed.

16              f. Shunned by Co-Workers.  Likewise, the Court will also dismiss

17  Plaintiff's claim that she was shunned by her co-workers and supervisors.   Although Plaintiff

18  concedes that co-workers are free to determine with whom they associate, *Brooks v. City of San*

19  *Mateo*, 229 F.3d 917, 929 (9th Cir.2000), Plaintiff argues that management institutionalized their

20  shunning, thus making it the unwritten policy of the Federal Defendant.  Plaintiff appears to assert

21  that because her supervisors did not approach her to ask her what was wrong, she was shunned by

22  management. This, without more, is insufficient to support this claim.

23          **3. Causal Link**

24          The causal link between a protected activity and the alleged retaliatory action "can

25  be inferred from timing alone" when there is a close proximity between the two. *Villiarimo v.*

26  *Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002).  The Ninth Circuit has held that events

AO 72
(Rev. 8/82)

1   occurring within similar intervals of time are sufficiently proximate to support an inference of

2   causation. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that sufficient

3   evidence of causation existed where adverse employment action occurred less than three months

4   after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir.1986)

5   (concluding that there was adequate evidence of a causal link where the retaliatory action occurred

6   less than two months after the protected activity).

7           The Federal Defendant argues that there is no causal link between Plaintiff's

8   lodging of her complaint with Mr. Rucker on February 3, 2000, and Mr. Schweitzer's alleged

9   denial of medical benefits in April-May 2000.  Specifically, the Federal Defendant alleges that Mr.

10  Schweitzer had no knowledge that Plaintiff had engaged in a protected activity because he "was

11  not privy to any conversations or meetings between Mr. Rucker and [Plaintiff]."  The Court notes,

12  however, that lack of knowledge of what Mr. Rucker and Plaintiff discussed is separate and

13  distinct from lack of knowledge that Plaintiff had filed a complaint against Call alleging sexual

14  harassment.  As a result, the Court cannot find as a matter of law that Mr. Schweitzer had no

15  knowledge that Plaintiff had engaged in protected activity.

16          With respect to the constructive discharge and service inspection investigation

17  claims, the Federal Defendant does not appear to contest the temporal proximity between these

18  adverse employment actions and the protected activity.  Accordingly, Plaintiff has met all the

19  elements to establish a prima facie case of retaliation under Title VII for the following claims: (1)

20  termination of counseling sessions, (2) constructive discharge, and (3) service inspection

21  investigation.

22          **4. The Federal Defendant's Legitimate, Non-discriminatory Reason**

23          The Federal Defendant does not appear to provide a legitimate, non-discriminatory

24  reason for Plaintiff's constructive discharge claim or her service inspection investigation claim.

25  However, with respect to the 2 ½ month interruption in visits in Plaintiff's counseling sessions,

26  the Federal Defendant claims there was no discriminatory motive behind the action.  Instead, it

12

AO 72
(Rev. 8/82)

1   claims the interruption was the unintentional result of a failure to communicate between Mr.

2   Rucker, the former plant manager of the Las Vegas facility who subsequently transferred to

3   Oklahoma, and Dick Schweitzer, the Las Vegas Employee Assistance Program Coordinator.

4   According to Mr. Rucker's deposition, he approved to pay for 12 counseling sessions.  After

5   Plaintiff called him to complain about the termination of her counseling sessions, Mr. Rucker

6   called Mr. Schweitzer and told him "to go talk to the new plant manager and get him to pay for the

7   12," after which the problem was resolved.

8                            **5. Pretext for Discrimination**

9            Because the Federal Defendant has proffered a nondiscriminatory reason for its

10   actions with respect to the termination of the counseling sessions, the burden shifts back to

11   Plaintiff to show that the articulated reason is a pretext for discrimination.  The Court finds that

12   Plaintiff has presented sufficient evidence from which a jury could infer that the reason was

13   merely pretextual.  According to Mr. Rucker's deposition, he informed Mr. Schweitzer prior to

14   leaving for Oklahoma that the facility would pay for the 12 visits, thus undermining the Federal

15   Defendant's claim that there was a failure to communicate between the two.  Accordingly, because

16   the Court finds a genuine issue of material fact exists regarding whether the interruption in

17   counseling sessions was the result of a discriminatory motive or a breakdown in communications,

18   the Court will not grant summary judgment on this claim.  Therefore, the following claims for

19   retaliation survive: (1) termination of counseling sessions, (2) constructive discharge, and (3)

20   service inspection investigation.

21                       **B. Hostile Work Environment**

22            Plaintiff claims the Federal Defendant subjected her to a hostile work environment

23   in violation of Title VII.  Specifically, Plaintiff asserts that during the period from August 1999 to

24   January 29, 2000, Call made repeated unwanted sexual advances towards her at her workplace.

25   Further, Plaintiff alleges that the Postal Service is vicariously liable for the actions of Call.

26

AO 72
(Rev. 8/82)

13

1    To prevail on this claim, Plaintiff must establish that (1) she was subjected to

2    verbal or physical conduct because of her gender or religion; (2) that the conduct was unwelcome;

3    and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her

4    employment and create an abusive work environment.  *Gregory v. Widnall*, 153 F.3d 1071, 1074

5    (9th Cir. 1998).  A workplace permeated with "discriminatory intimidation, ridicule, and insult ...

6    is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

7    abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21(1993).

8    In proving such a claim, Plaintiff must show that her workplace was "both

9    objectively and subjectively offensive, one that a reasonable person would find hostile or abusive,

10   and one that the victim in fact did perceive to be so." *Nichols v. Azteca Rest. Enters., Inc.*, 256

11   F.3d 864, 871 (9th Cir. 2001)(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

12   A hostile or abusive environment "can be determined only by looking at all of the circumstances."

13   *Harris*, 510 U.S. at 23.  That includes "the frequency of the discriminatory conduct; its severity;

14   whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

15   unreasonably interferes with an employee's work performance." *Id*. "Simple teasing, offhand

16   comments, and isolated incidents (unless extremely serious) will not amount to discriminatory

17   changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S.

18   775, 788 (1998).

19   The Federal Defendant contends that Plaintiff's sexual harassment and hostile

20   workplace claim is time barred because Plaintiff did not present her claim to an EEOC counselor

21   within 45 days of the discriminatory action.  "To establish federal subject matter jurisdiction, a

22   plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a

23   Title VII claim. Exhaustion of administrative remedies under Title VII requires that the

24   complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate

25   the charge." *Lyons v. England,*  307 F.3d 1092, 1103 -1104 (9th Cir. 2002) (citations omitted).

26

14

AO 72
(Rev. 8/82)

1    Plaintiff concedes that she failed to file the EEOC charge during the 45-day period,

2    nonetheless, Plaintiff argues that she is entitled to equitable tolling on the exhaustion of

3    administrative requirements due to (1) her mental or emotional disability and (2) never properly

4    being informed of the legal consequences of not reporting sexual harassment within the 45-day

5    period.  The Court finds both arguments unpersuasive.  First, Plaintiff's deposition testimony

6    demonstrates that Plaintiff chose not to file an EEOC complaint because she did not want to

7    "humiliate myself more than I needed to," due to her concerns regarding the confidentiality of the

8    EEOC process.  Although Plaintiff claims her psychological condition at the time caused her to

9    not file an EEOC complaint, *Lopez v. Citibank*, 808 F.2d 905, 906 (1st Cir. 1987) (equitable

10   tolling may be appropriate where Title VII plaintiff failed to file EEOC charge due to mental or

11   emotional disability), her psychological condition did not prevent her from filing a complaint with

12   the Postal Service.  Second, according to Plaintiff's deposition, she discussed the EEOC as an

13   option with Mr. Harrell, the union president.  In addition, a poster regarding sexual harassment

14   was posted at the workplace.  The poster states that "If pursuing an EEO complaint, you must

15   contact an EEO counselor within 45 days of the act(s) giving rise to your claim in order to

16   preserve your rights under federal law."  The Court finds that the poster was sufficient to apprise

17   Plaintiff, albeit constructively, of the 45-day statute of limitations and that failure to do so would

18   not preserve, or in other words extinguish, her rights under federal law, which would include Title

19   VII claims.  The Court therefore finds that Plaintiff is not entitled to equitable tolling on her sexual

20   harassment hostile workplace claim.  Accordingly, Plaintiff's First Cause of Action will be

21   dismissed.

22       **C. Constructive Discharge**

23       "A constructive discharge occurs when, looking at the totality of circumstances, 'a

24   reasonable person in [the employee's] position would have felt that he was forced to quit because

25   of intolerable and discriminatory working conditions.'" *Watson*, 823 F.2d 360, 361 (citation

26   omitted).  The Federal Defendant argues that Plaintiff was not subjected to a constructive

AO 72
(Rev. 8/82)

1   discharge and that no reasonable person in Plaintiff's position would have felt that Plaintiff was

2   forced to quit because of intolerable and discriminatory working conditions.  According to the

3   Federal Defendant, Plaintiff incurred no tangible employment action, no hostile work

4   environment, and no acts of retaliation.  The Court disagrees.  As explained above, the Court

5   found that the termination of Plaintiff's counseling sessions, as well as the manner in which the

6   service inspection investigation was conducted, were sufficient to allege an adverse employment

7   action under a retaliation claim.  Nonetheless, the Federal Defendant argues that all of the alleged

8   discriminatory acts were no longer present by the time Plaintiff left the Postal Service.  Although

9   the alleged acts did occur some months prior to Plaintiff going on sick leave in July 2000 and her

10  resignation on November 14, 2000, the Court finds that a genuine issue of material fact exists as to

11  whether the cumulative effects of the alleged retaliatory acts were sufficient to create an ongoing

12  intolerable and discriminatory working condition.  Specifically, a jury could find that a reasonable

13  person would feel forced to quit if the perpetrator of sexual harassment was seemingly allowed to

14  escape with impunity, not withstanding his removal on other grounds.  Accordingly, the Court will

15  not dismiss the claim.

16          **D. Sovereign Immunity for State Law Claims**

17          The Federal Defendant asserts that Plaintiff's Fourth Cause of Action for

18  Intentional Infliction of Emotional Distress and her Fifth Cause of Action for Negligent

19  Supervision are barred under the Federal Tort Claims Act (FTCA) because Plaintiff failed to file a

20  claim with the Postal Service.   Plaintiff's reliance on *Jense v. Runyon*, 990 F.Supp 1320 (D. Utah,

21  1998) is misplaced.  The court in *Jense* acknowledged that the FTCA "preserves the United States'

22  immunity from suit for '[a]ny claim arising out of assault [or] battery,'" *Jense*, 990 F.Supp at

23  1330, but held plaintiff's claims for negligent supervision and intentional infliction of emotional

24  distress were not barred because her torts were not based primarily on assault or battery.

25  However, the *Jense* court did not hold that the administrative requirements of the FTCA did not

26  need to be complied with for a negligent supervision or intentional infliction of emotional distress

16

AO 72
(Rev. 8/82)

claim.  Accordingly, because Plaintiff did not exhaust the administrative requirements of the

FTCA, the Court will dismiss Plaintiff's Fourth and Fifth Causes of Action.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the Federal Defendant's Motion to Dismiss and

for Summary Judgment (#64) is GRANTED in part and DENIED in part as follows:

- •   the Court grants summary judgment as to Plaintiff's First Cause of Action
  for Hostile Work Environment.

- •   the Court grants summary judgment on Plaintiff's Third Cause of Action for
  Retaliation to the extent the claim is based on the following retaliatory acts:
  (1) attempted termination, (2) stand-up session, (3) shunned by co-workers.
  To the extent the Retaliation claim is based on (1) termination of counseling
  sessions, (2) constructive discharge, and (3) service inspection
  investigation, the motion is denied.

- •   the Court grants summary judgement as to Plaintiff's Fourth Cause of
  Action for Intentional Infliction of Emotional Distress and her Fifth Cause
  of Action for Negligent Supervision.

- •   the motion for summary judgment is denied in all other respects.

Dated:   August 28, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**

17

AO 72
(Rev. 8/82)